Filed 12/20/24  Hernandez v. The Vons Companies CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ERICA MEJIA HERNANDEZ, | D082326 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. ECU002015) |
| THE VONS COMPANIES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Imperial County, L. Brooks Anderholt, Judge.  Reversed and remanded for further proceedings.

Walter Clark Legal Group, Walter Clark and Dan C. Bolton for Plaintiff and Appellant.

Stone Dean, Gregory E. Stone and Amy W. Lewis for Defendant and Respondent.

Plaintiff Erica Mejia Hernandez appeals a judgment in her personal injury action after the trial court granted the motion for summary judgment

filed by defendant The Vons Companies, Inc. (Vons).[1] On appeal, Hernandez contends that there are triable issues of material fact that precluded summary judgment for Vons. As explained below, we agree and reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In 2021, Hernandez filed a complaint against Vons, alleging three causes of action: (1) premises liability; (2) negligence; and (3) negligent hiring, retention, and supervision. It alleged that on August 14, 2019, at about 2:00 p.m., Hernandez exited a Vons store owned by Vons (Premises), which store is located in the City of Brawley (City), and was struck by a vehicle, causing her to sustain serious injuries. Her cause of action for premises liability alleged that Vons negligently managed, maintained, and inspected the Premises and allowed dangerous conditions to exist, which dangerous conditions caused her injuries. It further alleged that those dangerous conditions were known, or in the exercise of ordinary and reasonable care should have been known, to Vons in time for a reasonable, prudent person to have taken sufficient measures necessary to ensure the safety to all persons on the Premises by warning of the dangerous conditions and/or removing the dangerous conditions. It alleged that Vons owed her a duty of care and breached that duty by failing to maintain a safe premises and/or to remove or warn persons of the unsafe conditions.

---

[1] Vons was erroneously sued as "Safeway, Inc., doing business as Vons." Judgment was entered with respect to Vons.

[2] Because this is an appeal from a summary judgment, we state the facts in the light most favorable to Hernandez. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

Vons filed a motion for summary judgment, arguing that there were no triable issues of material fact and that it was entitled to judgment as a matter of law. In particular, it argued that the Vons store parking lot complied with industry standards and the City's regulations and did not cause or contribute to the accident. It argued that Hernandez could not provide any evidence that Vons breached any duty to her or caused the accident and therefore it was entitled to summary judgment.

In support of its motion for summary judgment, Vons submitted a separate statement of undisputed facts and supporting evidence. In particular, its separate statement asserted that it was undisputed that just prior to the accident, Hernandez admitted walking out of the Vons store, looking across the parking lot, and seeing her son near his vehicle. She started walking toward her son and does not remember anything else. A car, driven by Ryan Lyall Suits, struck Hernandez. Suits stated that he did not see Hernandez before she stepped off the curb into the path of his car and that he was unable to avoid striking her with his car. He did not believe his car was traveling faster than 10 miles per hour. He stated he slammed on his car's brakes when he saw Hernandez. Detective Javier Martinez of the City's police department responded to the accident and found Hernandez lying flat on her back about four to five feet from the curb. His investigation showed that Hernandez was looking away from Suits's car because the back of her head had made contact with the passenger side windshield of his car. Vons's separate statement also set forth the opinions of Thomas Fugger, Jr., its forensic engineer expert, as discussed in more detail below. In particular, Fugger opined that there was no evidence to support the hypothesis that the configuration of the parking lot caused or contributed to the accident. In

3

support of its motion for summary judgment, Vons also submitted Fugger's declaration.

In opposition to Vons's motion for summary judgment, Hernandez submitted a separate statement of material facts and supporting evidence. In particular, her separate statement disputed Vons's assertion that she exited, started to walk toward her son's car, and remembered nothing else. Instead, she asserted that after exiting the Vons store, she saw her son in the parking lot, then checked and looked both ways, and, seeing no cars, started walking toward her son's car, believing it was safe to do so. She also disputed Vons's assertion that Suits stated he was unable to avoid striking her with his car. She disputed its assertion that Suits believed he was not traveling more than 10 miles per hour, noting that Martinez stated Suits was going faster than 10 miles per hour. She noted Martinez stated that, based on the damage to the front windshield of Suits's car, he determined that his car was probably going at a higher rate of speed. She also disputed Fugger's opinions, citing the opinions set forth in the declaration of Brad P. Avrit, her forensic engineer expert. Her separate statement also set forth additional material facts and supporting evidence, including certain opinions stated in Avrit's declaration, as discussed below. In support of her opposition, Hernandez also submitted Avrit's declaration.

In its reply to Hernandez's opposition, Vons primarily argued that Avrit's opinions were based on inapplicable standards set forth in the Manual of Uniform Traffic Control Devices (MUTCD) and therefore did not show there were any triable issues of material fact.

On March 20, 2023, after previously hearing arguments of counsel, the trial court issued a written order granting Vons's motion for summary judgment, which order we discuss below. The court found that Vons had

submitted evidence showing Hernandez could not prove the elements of each of her three causes of action and she had not submitted evidence in opposition showing there were triable issues of material fact that precluded summary judgment for Vons.

On April 5, the court entered judgment for Vons. Hernandez timely filed a notice of appeal challenging the judgment.

DISCUSSION

I

*Motions for Summary Judgment Generally*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) A defendant moving for summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Id.* at p. 850.) To meet that burden, a defendant must show that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. (*Ibid.*; Code Civ. Proc., § 437c, subd. (p)(2).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850.) If the defendant does not present sufficient evidence to meet its initial burden, the trial court must deny the motion for summary judgment. (*Ibid.*) If the defendant meets its initial burden of production, the burden shifts to the plaintiff to set forth specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto. (*Id.* at

5

p. 849.) If the plaintiff meets that burden, summary judgment should be denied. (*Gaggero v. Yura* (2003) 108 Cal.App.4th 884, 889.) If not, summary judgment for the defendant is appropriate. (*Ibid.*)

On appeal, we review the trial court's ruling on a motion for summary judgment de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opposing party. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) In so doing, we resolve all doubts regarding whether any triable issue of material fact exists in favor of the party opposing the motion for summary judgment. (*Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562.)

## II

### *Law of Negligence and Premises Liability Generally*

The question of whether a defendant owed a plaintiff a duty of reasonable care to avoid injury to the plaintiff is a question of law, which must be reviewed de novo on appeal. (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770 (*Cabral*).) In general, each person has a duty to use ordinary care and is liable for injuries caused to others by his or her failure to exercise reasonable care in the circumstances. (Civ. Code, § 1714, subd. (a); *Cabral*, at p. 771.) "[T]he question of what is reasonable will depend in each case on the particular circumstances facing that defendant considering the foreseeability of the risk of harm balanced against the extent of the burden of eliminating or mitigating that risk." (*Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 279.)

"The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1159

6

(*Kesner*).) Premises liability is based on an owner's possession of the premises and its attendant right to control and manage the premises. (*Ibid*.) "The proper test to be applied to the liability of the possessor of land . . . is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others . . . ." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 119.)

"The general rule is that a landowner 'owes certain affirmative duties of care, as to conditions or activities on the land, to persons who come on the land.' [Citation.] [Civil Code] [s]ection 1714 provides that every person 'is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property . . . .' [Citation.] Under [Civil Code] section 1714, landowners owe a duty to exercise ordinary care in managing their property in light of the foreseeability of injury to others." (*Hoffman v. Young* (2022) 13 Cal.5th 1257, 1266 (*Hoffman*).) "[A]s to foreseeability, we have explained that the court's task in determining duty 'is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed . . . .' " (*Cabral, supra*, 51 Cal.4th at p. 772.)

"[T]he issue concerning a landlord's duty is not the existence of the duty, but rather the scope of the duty under the particular facts of the case. [Citation.] Reference to the *scope* of the landlord's duty 'is intended to describe the specific steps a landlord must take in a given specific circumstance to maintain the property's safety to protect a tenant from a specific class of risk. It is this question that we decide as a matter of law.'

[Citation.]  A court deciding the issue of the scope of a landlord's duty 'should limit its inquiry to the specific action the plaintiff claims the particular landlord had a duty to undertake in the particular case. . . .  Only after the scope of the duty under consideration is defined may a court meaningfully undertake the balancing analysis of the risks and burdens present in a given case to determine whether the specific obligations should or should not be imposed on the landlord.' " (*Lawrence v. La Jolla Beach & Tennis Club, Inc.* (2014) 231 Cal.App.4th 11, 23 (*Lawrence*).)

"[A]lthough a store owner is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe." (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 (*Ortega*).)  "Businesses have a common law duty of ordinary care to their customers that extends to every area of the store in which they are likely to shop." (*Hassaine v. Club Demonstration Services, Inc.* (2022) 77 Cal.App.5th 843, 847.)

In determining the factual question of whether an owner or possessor of property has breached its duty of care to keep the property in a reasonably safe condition, CACI No. 1001 instructs the trier of fact:

> "A person who [owns/leases/occupies/controls] property is negligent if that person fails to use reasonable care to keep the property in a reasonably safe condition.  A person who [owns/leases/occupies/controls] property must use reasonable care to discover any unsafe conditions and to repair, replace, or give adequate warning of anything that could be reasonably expected to harm others.
>
> "In deciding whether [name of defendant] used reasonable care, you may consider, among other factors, the following: [¶] (a) The location of the property; [¶] (b) The likelihood that someone would come on to the property in the same manner as [name of plaintiff] did; [¶] (c) The likelihood of harm; [¶] (d) The probable seriousness of such harm; [¶]

8

(e) Whether [name of defendant] knew or should have known of the condition that created the risk of harm; [¶] (f) The difficulty of protecting against the risk of such harm; [¶] (g) The extent of [name of defendant]'s control over the condition that created the risk of harm; [and] [¶] (h) [Other relevant factor(s).]"

Importantly, " 'a defendant property owner's compliance with a law or safety regulation, in and of itself, does not establish that the owner has utilized due care. The owner's compliance with applicable safety regulations, while relevant to show due care, is not dispositive, if there are other circumstances requiring a higher degree of care.' " (*Lawrence, supra*, 231 Cal.App.4th at p. 31.)

III

*Trial Court Erred by Granting Vons's Motion for Summary Judgment*

Hernandez contends that the trial court erred by granting Vons's motion for summary judgment. In particular, she argues that Vons did not carry its initial burden to show there were no triable issues of material fact on her cause of action for premises liability, citing Fugger's unsupported and conclusory declaration. She further argues that, even if Vons carried its initial burden, she submitted evidence showing a triable issue of material fact existed that precluded summary judgment for Vons, citing Avrit's declaration.

A

In support of its motion for summary judgment, Vons submitted Fugger's declaration, which stated that he had reviewed the depositions of Hernandez, Suits, and Martinez, Martinez's traffic collision report, and photographs of the parking lot area as it existed in August 2019. He also reviewed "the Site Plan Details for construction of the parking lot signed off by the City of Brawley Department of Building Inspection for the subject

9

Vons parking lot . . . in or about 2007 and City of Brawley Municipal Code."

Based on that information, Fuggers expressed the following opinions:

> "6.  Based upon the information provided to me along with my training and experience, it is probable that the cause of the subject collision resides with the driver of the car, Mr. Suits, and the pedestrian Ms. Hernandez.  There is no evidence to support the hypothesis that the configuration of the parking lot caused or contributed to the incident . . . .

> "7.  In addition, my review of the available documents and research indicate that the subject parking lot complied with industry standards and the City of Brawley regulations, and the drive aisle where the incident occurred did not violate any codes or standards."

In her opposition to Vons's motion, Hernandez submitted Avrit's 13-page declaration, which listed the documents and evidence he reviewed (including 61 photographs of the site).  His declaration discussed certain provisions of the California Building Code and the MUTCD regarding the maintenance of premises in a safe condition and the use of traffic control devices and traffic calming features, such as stop signs, roadway striping, sidewalks, crosswalks, and speed bumps to mitigate the risk of vehicles striking pedestrians.

Avrit concluded that the Vons parking lot was not in compliance with the MUTCD, explaining that the parking lot lacked speed bumps in front of the Vons store, lacked stop signs or signage warning of pedestrian activity, and lacked clearly visible crosswalk lines.  He stated:

> "18.  Relative to implementing a clear means of communication to vehicles and pedestrians traveling on private property, such as retail store parking lots, it is standard in the retail parking lot industry to use signage, markings, and other means of traffic control/calming devices that are consistent with those used on public roads.  One such traffic control device that is commonly used in

10

retail parking lots are stop signs and signage painted on the asphalt. . . . [The] subject parking lot did not have a stop sign or white paint providing an adequate amount of contrast."

Avrit then expressed his opinion that the Vons parking lot was in an unsafe condition and explained his reasoning for that opinion, as follows:

"21. In my opinion, the subject area parking lot was in an unsafe condition at the time [Hernandez] was struck by Mr. Suits. The subject crosswalk was not easily visible to motorist[s] and did not conform to industry standards. The subject parking lot intersection area did not incorporate the use of typical traffic control devices as used at other retail locations and posed a significant hazard to pedestrians walking between the store entrance and the parked vehicles. Although the area immediately in front of the exit has asphalt markings delineating a pedestrian path, the markings were not adequate due to non-compliance with the MUTCD. The incident area lacked any identifiers such [as] stop signs, speedbumps, bollards, and bright contrasting paint that would draw motorists' attention to the upcoming pedestrian crossing."

Avrit further explained that Vons should have provided a safer pedestrian crosswalk at the entrance/exit area of the Vons store. He opined that the accident was likely caused by the condition of the crosswalk that was not effective in alerting motorists of the upcoming crosswalk and/or a lack of stop signs and not because of a lack of situational awareness or due diligence on Hernandez's part. He further concluded that Vons knew, or should have known, of the unsafe condition created by the parking lot's configuration and that Vons did not meet the applicable standard of care for premises owners. He also opined that Vons could have likely eliminated and/or significantly mitigated the parking lot's unsafe condition prior to the accident by the placement of visual cues, such as signage, bollards, and bright/fresh pavement markings, to draw the attention of a motorist to the upcoming

11

pedestrian crosswalk. Avrit's declaration attached exhibit D, which exhibit set forth certain provisions of the 2009 version of the MUTCD.

In its order granting Vons's motion for summary judgment, the trial court first overruled Vons's objections to Avrit's declaration.[3] The court then addressed whether Vons had met its initial burden to show there were no triable issues of material fact on any of the three causes of action alleged by Hernandez and found that Vons had carried its initial burden of presenting admissible evidence showing that Hernandez could not prove the elements of each of her causes of action. Concluding that the burden then shifted to Hernandez to show there were triable issues of material fact, the court first found, contrary to Avrit's declaration, that the MUTCD did not apply to the Vons parking lot. The court noted that the MUTCD applies to streets, highways, bikeways, and private roads open to public travel and therefore did not apply to the Vons parking lot, which was located on private property. The court then rejected Avrit's opinion as being speculative, citing his failure to review the permits issued by the City for the Vons parking lot. It noted that Fugger, Vons's expert, had reviewed that information and considered it in forming his opinion. The court also found that there were no triable issues of material fact as to Hernandez's second and third causes of action. Finding there were no triable issues of material fact and that Vons was entitled to judgment as a matter of law, the court granted its motion for summary judgment.

---

[3] In opposing Vons's motion, Hernandez objected to Fugger's declaration. In its order, the court did not expressly rule on her objection, but, by relying on Fugger's declaration in granting Vons's motion, the court implicitly overruled her objection to his declaration.

B

In general, as discussed above, a retail or other property owner owes certain affirmative duties of care, as to conditions or activities on the property, to its customers or other persons who come onto the property. (Civ. Code, § 1714, subd. (a); *Hoffman, supra*, 13 Cal.5th at p. 1266.) Therefore, a retail property owner owes a duty to exercise ordinary care in managing its property in light of the foreseeability of injury to others. (*Hoffman*, at p. 1266.)  Premises liability is based on an owner's possession of the premises and its attendant right to control and manage the premises. (*Kesner, supra*, 1 Cal.5th at p. 1159.)  In particular, a store owner owes its customers a duty to exercise reasonable care in keeping its premises reasonably safe.  (*Ortega, supra*, 26 Cal.4th at p. 1205.)

However, in determining the question of law whether a property owner owes a duty of care, we do not simply decide whether a duty is owed, but must also decide what the *scope* of that duty is given the particular circumstances of the case. (*Lawrence, supra*, 231 Cal.App.4th at p. 23.)  The scope of that duty defines the specific steps a property owner must take in a given specific circumstance to maintain its property's safety to protect a customer from a specific class of risk.  (*Ibid.*)

In her cause of action against Vons for premises liability, Hernandez alleged that Vons owed her a duty to maintain its premises, including the parking lot area, in a reasonably safe condition and to remove or repair any unsafe or dangerous conditions that it knew existed, or in the exercise of ordinary and reasonable care should have been known existed, or, at least, advise or warn her of any such unsafe or dangerous conditions.  Hernandez alleged that Vons breached that duty of care owed to her, which breach was a legal cause of the injuries she suffered when she was struck by Suits's car as

13

she exited the Vons store. We conclude that Hernandez's cause of action for premises liability sufficiently alleged that Vons owed her a duty of care and adequately described the scope of that duty (i.e., to maintain the parking lot in a reasonably safe condition and remove or repair any unsafe or dangerous conditions it reasonably should have known of or, at least, warned her of any unsafe or dangerous conditions). To the extent Vons argues that it did not owe Hernandez any duty "to prevent her from being struck by a vehicle in the parking lot in front of [its] store," it misconstrues the applicable duty of care that it owed her. A property owner's duty of care is *not* defined as a duty to prevent a customer or other person from being injured in the particular circumstances of a case, because a property owner is not an insurer against injury. (*Ortega, supra*, 26 Cal.4th at p. 1205.) Rather, the property owner's duty of care is generally defined as a duty to exercise reasonable care in keeping the premises reasonably safe. (*Ibid.*) And the scope of that duty of care is then defined by the specific steps a property owner must take in a given specific circumstance to maintain its property's safety to protect a customer from a specific class of risk. (*Lawrence, supra*, 231 Cal.App.4th at p. 23.) Therefore, we conclude, as a matter of law, that Vons owed Hernandez a duty of care under her premises liability cause of action in accordance with the scope of that duty as discussed herein.

C

Hernandez argues that the trial court erred by finding Vons carried its initial burden to show there were no triable issues of material fact and that it was entitled to judgment as a matter of law. She argues that Fugger's declaration was insufficient to show there was no triable issue of material fact regarding Vons's breach of its duty of care as alleged in her first cause of action for premises liability. In particular, she argues his declaration was not

14

supported with attachments of his cited sources and his opinions were conclusory and lacking a reasoned explanation.

Preliminarily, we address Hernandez's argument that Fugger's declaration improperly cited documents or other evidence in support of his opinion without attaching those documents to his declaration and/or those documents were not properly authenticated. In particular, she argues Fugger referred to, and relied on, "Site Plan Details" for construction of the Vons parking lot that purportedly were "signed off" by the City's building department. However, those site plan details (or other parking lot construction plans) were not attached to his declaration, nor were any documents or records showing that those plans or permits were approved or issued by the City's building department. Assuming arguendo that any records showing the City's approval of a permit for the construction of the parking lot would be admissible as an exception to the hearsay rule for business records or official records under Evidence Code section 1271 and/or section 1280, the record nevertheless shows that Vons failed to attach those records or other documents to Fugger's declaration or otherwise submit them in support of its motion for summary judgment. Furthermore, Vons did not properly authenticate those records or documents for admission in evidence under those exceptions to the hearsay rule. Accordingly, as Hernandez argues, those records or documents could not be relied on, or cited by, either Fugger or the trial court in support of any purported factual assertion that the City issued a building permit for the Vons parking lot or that the parking lot otherwise complied with the City's building code or other regulations or ordinances. (Cf. *Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 742–743 (*Garibay*) [expert witness relied on medical records that were not in evidence or properly authenticated and therefore his declaration lacked any

15

evidentiary value].) An expert opinion "may not be based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural, for then the opinion has no evidentiary value and does not assist the trier of fact." (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510 (*Bushling*).) Therefore, there was also no admissible evidence to support the trial court's finding that the Vons parking lot passed the City's building code inspection and received a building permit. Because that hearsay evidence was not offered or admitted in evidence and lacked proper authentication, we disregard Fugger's declaration to the extent it relied on that evidence as lacking in evidentiary value.[4] (*Garibay*, at pp. 742–743; *Bushling*, at p. 510.)

Given the inadmissibility of the hearsay evidence relied on by Fugger in support of his declaration as discussed above, we conclude, as Hernandez argues, that his declaration lacked evidentiary support for the opinions he expressed therein. In particular, Fugger declared: "[M]y review of the available documents and research indicate that the subject parking lot complied with industry standards and the City of Brawley regulations, and the drive aisle where the incident occurred did not violate any codes or standards." However, there is no admissible evidence to support his opinion that the Vons parking lot complied with the City's regulations or that it did

---

[4]     Because we disregard Fugger's declaration to the extent it relied on hearsay evidence that the City issued a building permit for the Vons parking lot or that the parking lot otherwise complied with the City's building code, regulations, or ordinances, we need not, and do not, address Hernandez's alternative argument that that evidence also was inadmissible as "true case-specific facts asserted in hearsay [evidence] statements" under *People v. Sanchez* (2016) 63 Cal.4th 665, 676.

16

not violate any of the City's building codes.[5]  As discussed above, we must disregard Fugger's opinion to the extent it relied on inadmissible hearsay evidence and therefore lacked evidentiary value.  (*Garibay, supra,* 161 Cal.App.4th at pp. 742–743; *Bushling, supra,* 117 Cal.App.4th at p. 510.)

Disregarding Fugger's opinion to the extent that it relied on hearsay evidence that the Vons parking lot complied with the City's regulations or that it did not violate any of the City's building codes, Fugger's opinion is reduced to his sole opinion that the parking lot "complied with industry standards and . . . did not violate any . . . standards."  However, Fugger's declaration does not identify or otherwise specifically describe what those purported "industry standards" are.  "[W]here an expert declaration does not provide the facts upon which its conclusions are based and a reasoned explanation of how such facts led to the conclusions, it 'does not establish the absence of a material fact issue for trial, as required for summary judgment.' "  (*Doe v. Samaritan Hospital* (2018) 23 Cal.App.5th 653, 656 (*Doe*).)  Furthermore, "[a]n expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based."  (*Wicks v. Antelope Valley Healthcare*

---

[5]  We also note, as Hernandez argues, that assuming arguendo the Vons parking lot complied with the City's building code, regulations, and ordinances, that compliance "does not necessarily eliminate negligence but instead simply constitutes evidence for jury consideration with other facts and circumstances."  (*Hernandez v. Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1830–1831.)  As stated above, a " 'property owner's compliance with a law or safety regulation, in and of itself, does not establish that the owner has utilized due care.  The owner's compliance with applicable safety regulations, while relevant to show due care, is not dispositive, if there are other circumstances requiring a higher degree of care.' "  (*Lawrence, supra,* 231 Cal.App.4th at p. 23.)

17

*Dist.* (2020) 49 Cal.App.5th 866, 881 (*Wicks*).) Here, as Hernandez argues, Fugger's opinion that the Vons parking lot complied with, and did not violate, any industry standards was wholly unsupported by *any* explanation, much less a reasoned explanation, of what those standards were and why he concluded the parking lot complied with those standards. Absent a reasoned explanation, Fugger's conclusory opinion lacks evidentiary value and cannot provide support for Vons's motion for summary judgment. (*McAlpine v. Norman* (2020) 51 Cal.App.5th 933, 939; *Doe*, at p. 656; *Wicks*, at p. 881.) For the same reasons, we conclude Fugger's opinions that "[t]here is no evidence to support the hypothesis that the configuration of the parking lot caused or contributed to the incident" and that "it is probable that the cause of the subject collision resides with the driver of the car, Mr. Suits, and the pedestrian Ms. Hernandez" also lack any reasoned explanation and must be disregarded as conclusory and without any evidentiary value.[6]

Given our conclusions above, we further conclude that Fugger's declaration provided no support for Vons's assertion that there were no triable issues of material fact on the element of its alleged breach of its duty of care that it owed to Hernandez under her cause of action for premises liability. Because Vons did not carry its initial burden to show that it was undisputed it did not breach its duty of care that it owed to Hernandez under her premises liability claim, the trial court erred by granting its motion for summary judgment. Because Vons did not carry its initial burden as to

_____

[6] Because California has adopted comparative negligence principles, we reject Vons's apparent assertion that negligence on behalf of Hernandez and/or Suits would preclude any premises liability it may have for the alleged unsafe condition of the Vons parking lot. (See *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, 828–829; *Martinez v. Chippewa Enterprises, Inc.* (2004) 121 Cal.App.4th 1179, 1186.)

Hernandez's first cause of action for premises liability and it did not alternatively move for summary adjudication of any of the three causes of action, we need not address her argument that the court also erred by finding Vons carried its burden to show there were no triable issues of material fact as to her second and third causes of action. In sum, the summary judgment for Vons must be reversed because it did not meet its initial burden to show there were no triable issues of material fact as to Hernandez's premises liability cause of action.

D

Nevertheless, assuming arguendo that Vons had met its initial burden to show there were no triable issues of material fact as to Hernandez's premises liability cause of action, we conclude, as Hernandez argues, that she carried her burden to show there were triable issues of material fact that precluded summary judgment for Vons. Importantly, in opposition to Vons's motion for summary judgment, Hernandez submitted Avrit's declaration in which he explained industry standards for private parking lots and cited certain provisions of the MUTCD regarding the use of various traffic control or calming devices. As discussed above, Avrit opined, among other things, that the Vons parking lot was in an unsafe condition because its crosswalk was not easily visible to motorists and lacked stop signs, speed bumps, bollards, and bright contrasting paint that would draw motorists' attention to the pedestrian crossing. In rejecting Avrit's opinion, the trial court found that the MUTCD did not apply to private parking lots and therefore his opinion was unfounded and speculative. However, assuming arguendo that the court was correct that the MUTCD does not directly apply to private parking lots, Avrit nevertheless stated that it was "standard in the retail parking lot industry to use signage, markings, and other means of traffic

19

control/calming devices that are consistent with those used on public roads."[7] By so stating and by also referring to certain provisions of the MUTCD (which presumably applies to public roads), we conclude that Avrit implicitly expressed his opinion that the MUTCD was, at least, *indirectly* applicable to the retail parking lot industry and therefore its provisions were relevant to the use of traffic control or calming devices to create or maintain retail parking lots in a safe condition.  On review of an order granting a motion for summary judgment, we "liberally construe the declarations for the plaintiff's experts and resolve any doubts as to the propriety of granting the motion in favor of the plaintiff."  (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 125–126.)  Furthermore, "[i]n light of the rule of liberal construction, a reasoned explanation required in an expert declaration filed in opposition to a summary judgment motion need not be as detailed or extensive as that required in expert testimony presented in support of a summary judgment motion or at trial."  (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 189.)  Accordingly, applying the above rule of liberal construction to Avrit's declaration, we conclude that his opinion that the Vons parking lot was in an unsafe condition was supported by a reasoned explanation (e.g., that it did not comply with retail parking lot industry standards, including provisions of the MUTCD, regarding the use of certain traffic control or calming devices).  (*Ibid.*; cf. *Doe, supra*, 23 Cal.App.5th at p. 656 [no reasoned explanation]; *Wicks, supra*, 49 Cal.App.5th at p. 881 [same].)

---

7      For purposes of our disposition of this appeal, we need not, and do not, decide whether the MUTCD directly applies to retail parking lots, as Hernandez argues on appeal.

20

We concluded above that Vons owed a duty of care to Hernandez as a matter of law under her premises liability cause of action and now further conclude that Avrit's declaration was sufficient to show there were triable issues of material fact on the elements of Vons's breach of that duty of care and legal causation of her injuries. Therefore, the trial court erred by finding there were no triable issues of material fact on Hernandez's first cause of action for premises liability and that Vons was entitled to judgment as a matter of law.

E

Because, as we concluded above, there are triable issues of material fact on Hernandez's first cause of action for premises liability, the summary judgment for Vons must be reversed regardless of whether there were triable issues of material fact on her second cause of action for negligence or third cause of action for negligent hiring, retention, and supervision. Furthermore, as discussed above, because Vons's motion for summary judgment did not alternatively move for summary adjudication of any of Hernandez's three causes of action, it is not entitled to summary adjudication of her second and/or third causes of action and therefore we need not, and do not, address those claims.

21

DISPOSITION

The judgment for Vons is reversed and the matter is remanded for further proceedings consistent with this opinion.  Hernandez shall recover her costs on appeal.


O'ROURKE, Acting P. J.

WE CONCUR:


KELETY, J.


CASTILLO, J.